UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>    v.<br><br>ERIC SANFORD,<br><br>         Defendant. | CASE NO. CR19-0172JLR<br><br>ORDER DENYING MOTION TO REOPEN DETENTION HEARING AND FOR TEMPORARY RELEASE |

## I.    INTRODUCTION

Before the court is Defendant Eric Sanford's motion to reopen his detention hearing.  (Mot. (Dkt. # 39).)  Mr. Sanford moves to reopen his detention hearing pursuant to 18 U.S.C. § 3142(f), or alternatively, for temporary release under 18 U.S.C. § 3142(i)(4).[1]  (*See generally id.*)  Plaintiff United States of America ("the Government")

---

[1] The caption of Mr. Sanford's motion indicates that he moves alternatively under 18 U.S.C. § 3142(i)(3).  (*See* Mot. at 1.)  However, based on the statutory language of § 3142(i)(3) and the body of Mr. Sanford's motion, which refers to § 3142(i)(4) (*see* Mot. at 22), the citation in the caption appears to be a typographical error.

ORDER - 1

opposes Mr. Sanford's motion. (*See* Resp. (Dkt. # 41).) The court has reviewed the motion, the Government's response, the parties' submissions in support of and in opposition to the motion, and the applicable law. Being fully advised,[2] the court DENIES Mr. Sanford's motion.

## II. BACKGROUND

The charges against Mr. Sanford arise out of an August 11, 2019, incident. (*See generally* Compl. (Dkt. # 1).) A Seattle Police Department ("SPD") officer stopped Mr. Sanford's car. (*See id.* ¶¶ 6-8.) While the officer was speaking to Mr. Sanford, the officer observed a handgun in open view on the passenger seat of Mr. Sanford's car. (*See id.* ¶ 9.) The officer ran a background check on Mr. Sanford, learned that he was convicted felon, and arrested him for unlawful possession of a firearm. (*See id.* ¶ 11.) On August 23, 2019, the Government charged Mr. Sanford with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*See generally id.*)

//

---

[2] Mr. Sanford requests oral argument on his motion. (*See* Mot. at 1 (stating in the caption, "telephonic oral argument requested")); *see also* Local Rules W.D. Wash. CrR 12(b)(12) ("A party desiring oral argument shall so indicate by typing ORAL ARGUMENT REQUESTED in the caption of the motion or responsive brief."). However, the parties have fully briefed the issues, and oral argument would not assist the court's decisional process. Accordingly, the court DENIES Mr. Sanford's request. *See id.* ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument."); *see also United States v. Hearns*, No. 1:20-CR-110, 2020 WL 1493747, *3 (N.D. Ohio Mar. 27, 2020) ("[W]hile the Bail Reform Act is silent about whether a defendant is entitled to an in-court hearing on an appeal of a detention order, there is ample authority for the conclusion that the Court may decide the motion on the filings (including proffers offered by counsel) as opposed to a hearing."); *United States v. McKnight*, No. CR18-16 TSZ, 2020 WL 1872412, at *1 (W.D. Wash. Apr. 15, 2020) (concluding that the defendant's motion under 18 U.S.C. § 3142(f) may be denied without a hearing).

Mr. Sanford initially appeared in the Western District of Washington on August 28, 2019. (*See* 8/28/19 Min. Entry (Dkt. # 6).) The Government moved to detain Mr. Sanford. (*See* Detention Mot. (Dkt. # 7).) Mr. Sanford sought release on bond and United States Probation and Pretrial Services supported Mr. Sanford's release on conditions. (*See* 9/3/19 Min. Entry (Dkt. # 10) ("Pretrial services report reviewed, recommends release. . . . Defense counsel agrees with PTS recommendation for release.").) On September 3, 2019, after hearing from both parties, United States Magistrate Judge John L. Weinberg ordered Mr. Sanford detained. (*See* Detention Order (Dkt. # 11).)

In detaining Mr. Sanford, Magistrate Judge Weinberg found "by clear and convincing evidence, that no condition or combination of conditions which [Mr. Sanford] can meet would reasonably assure the safety of other persons and the community." (*Id.* at 1.) Magistrate Judge Weinberg relied upon the circumstances surrounding the current charge including the fact that handgun retrieved at the scene "contained a magazine and a bullet in the chamber" (*id.* ¶ 1), the nature of Mr. Sanford's criminal history including a 2007 felony conviction in state court for delivery of cocaine and a 2009 conviction in federal court for being a felon in possession of a firearm (*id.* ¶ 2), Mr. Sanford's history "as a street level leader of the Deuce & Black Gangster Disciples" (*id.* ¶ 3), and Mr. Sanford's prior history on supervised release in which the court revoked his release and imposed additional imprisonment due to a series of alcohol and drug violations and an additional offense of assault and resisting arrest (*id.* ¶ 4). Magistrate Judge Weinberg also found that "[g]iven [Mr. Sanford's] earlier conviction for felon in possession, there

is no reason to believe he would, if released in this case, comply with a condition prohibiting him from possession of firearms." (*Id.* ¶ 5.)

On September 11, 2019, a grand jury sitting in the Western District of Washington returned a one-count indictment charging Mr. Sanford with being a felon in possession of a firearm. (*See* Indictment (Dkt. # 13).) Mr. Sanford waived a jury trial and the court set his bench trial for March 24, 2020. (*See* 3/12/19 Min. Entry (setting bench trial); Jury Waiver (Dkt. # 29).) However, prior to that date, the parties reached an agreement resolving Mr. Sanford's case. (*See* Resp. at 3.) Mr. Sanford agreed to enter a plea of guilty as charged, and the parties agreed to jointly recommend a sentence of 27 months of incarceration. (*See id.*)

Due to the crisis surrounding the current Coronavirus Disease 2019 ("COVID-19") public health emergency, on March 17, 2020, the United States District Court for the Western District of Washington issued General Order No. 02-20. *See* General Order ("GO") 02-20 (Mar. 17, 2020). The order closed the courthouse to the public and continued all criminal matters scheduled prior to June 1, 2020, pending further order of the court. *See id.* As a result, the court vacated Mr. Sanford's trial date and set a status hearing for June 1, 2020. (*See* 3/24/20 Order (Dkt. # 37).) On April 13, 2020, the United States District Court for the Western District of Washington extended General Order No. 02-20 and continued all criminal matters scheduled prior to July 1, 2020. *See* GO 07-20 (Apr. 13, 2020). Thus, on April 23, 2020, the court continued Mr. Sanford's June 1, 2020, status conference to July 1, 2020. (4/23/20 Order (Dkt. # 47).)

//

ORDER - 4

1  On April 17, 2020, Mr. Sanford moved to proceed with his guilty plea by
2 teleconferencing. (Telecon. Plea Mot. (Dkt. # 38).) On April 24, 2020, the court granted
3 Mr. Sanford's motion but clarified that the plea hearing would be conducted via video
4 teleconference before a Magistrate Judge. (4/24/20 Order (Dkt. # 48) at 5.) The court
5 also ordered the Clerk to set the video teleconference hearing "as soon as is practicable."
6 (*Id.*)

7  On April 17, 2020, Mr. Sanford also moved to reopen his detention hearing. (*See*
8 Mot.) Mr. Sanford argues that "[t]he current [COVID-19] pandemic drastically alters
9 [the court's] calculus [concerning detention], constituting a 'compelling reason'
10 warranting his temporary release until the pandemic has ended . . . ." (Mot. at 2.) Other
11 than the COVID-19 public health crisis, Mr. Sanford does not raise any other
12 circumstance warranting his release from detention. (*See generally id.*) Mr. Sanford
13 does not assert that he falls into any category of particular risk with regard to contracting
14 COVID-19. (*See* Reply (Dkt. # 46) at 5 ("Mr. Sanford has never alleged that he is
15 medically vulnerable.").) The court now considers Mr. Sanford's motion.

16  **III.   ANALYSIS**

17  As noted above, Mr. Sanford moves to reopen his detention hearing under 18
18 U.S.C. § 3142(f), or alternatively, for temporary release under 18 U.S.C. § 3142(i)(4).
19 The court considers Mr. Sanford's grounds under each provision in turn.
20 **A.   18 U.S.C. § 3142(f)**
21  A detention hearing may be reopened if the court finds that "information exists
22 that was not known to the movant at the time of the hearing" and that such information

has "a material bearing" on the issues of whether the defendant poses a flight risk or whether the defendant poses danger to the community, or both. *See* 18 U.S.C. § 3142(f). Mr. Sanford argues that information relating to the COVID-19 public health crisis was not available to the court when he was detained, and therefore, the court did not consider the risks or the danger posed to the community by the possibility of an outbreak of COVID-19 at the Federal Detention Center ("FDC") where Mr. Sanford is detained. (*See generally* Mot.)

In recent weeks, federal district courts across the country have considered large numbers of motions to reopen detention hearings under 18 U.S.C. § 3142(f) predicated on the current COVID-19 public health crisis. *See United States v. McKnight*, No. CR18-16TSZ, 2020 WL 1872412, at *1 (W.D. Wash. Apr. 15, 2020) (collecting numerous cases in which the pretrial detainee unsuccessfully relied on the current COVID-19 crisis). The majority of these decisions "make clear . . . that COVID-19 does not support the reopening of a detention hearing because 'the governing legal standard "is *not* . . . the harms that [a defendant's] incarceration [might] cause (however substantial),"' but rather '"the danger" that "would be posed *by the person's release*."'" *Id.* (quoting *United States v. Calvert*, No. 19-40068-03-HLT, 2020 WL 1847754, at *2 (D. Kan. Apr. 13, 2020) (quoting *United States v. Lee*, No. 19-CR-298, 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020), and 18 U.S.C. § 3142(g)(4)). Most courts to consider the issue have found that the COVID-19 pandemic does not in and of itself raise a change in circumstance that has a "material bearing" on whether there are conditions of release for the defendant that will reasonably assure the safety of the community or the

appearance of the defendant.  *See id.* at *2 (citing *United States v. Dodd*, No. 20-CR-0016 (NEB/HB), 2020 WL 1547419, at *2 (D. Minn. Apr. 1, 2020)); *see also United States v. Flores-Lopez*, No. CR19-203RSM, 2020 WL 1862599, at *2 (W.D. Wash. Apr. 14, 2020) (stating that "the Court agrees with the Government that the current COVID-19 pandemic alone was not a valid basis to reopen the issue of detention" under 18 U.S.C. § 3142(f)).

Mr. Sanford's motion for reopening his detention hearing is founded on speculation regarding the risk that he will contract COVID-19 while he is at the FDC and speculation regarding the impact any such infection would have on his health should he contract the disease.  (*See generally* Mot.)  Indeed, at present, there are no known COVID-19 infections at the FDC.  *See* https://www.bop.gov/coronavirus/ (visited May 1, 2020);[3] (*see also* Mot. at 7 (acknowledging that "no one has tested positive or died at the FDC")).  The court does not minimize the risks inherent in the COVID-19 pandemic and the particular challenges faced by detention facilities in light of this public health crisis.  However, the COVID-19 pandemic does not have a "material bearing" on the factors the court considers here—whether the defendant poses a flight risk and whether the defendant poses a danger to the community.  *See* 18 U.S.C. § 3142(f).  Indeed, if the COVID-19 pandemic were sufficient grounds alone to reopen a detention hearing under 18 U.S.C. § 3142(f), then the court would be hard pressed to envision a defendant who would not be presently so entitled.  The court cannot conclude that this is the result

---

[3] *See King v. Cty. of L.A.*, 885 F.3d 548, 555 (9th Cir. 2018) ("[W]e take judicial notice of the undisputed and publicly available information displayed on government websites.").

1 Congress intended when it added the statutory language upon which Mr. Sanford relies.

2 Accordingly, the court concludes that the existence of the pandemic alone does not justify

3 an alteration in the court's original decision to detain Mr. Sanford.[4]

4     Moreover, Magistrate Judge Weinberg's original grounds for detaining Mr.

5 Sanford were sound.  In particular, the court notes Mr. Sanford's criminal history

6 including a 2007 felony conviction in state court for delivery of cocaine and a 2009

7 conviction in federal court for being a felon in possession of a firearm.  (Detention Order

8 ¶ 2.)  In addition, the court notes Mr. Sanford's prior history on supervised release in

9 which the court revoked his release and imposed additional imprisonment due to a series

10 of alcohol and drug violations and an additional offense of assault and resisting arrest.

11 (*Id.* ¶ 4.)  Finally, this court agrees with Magistrate Judge Weinberg's assessment that

12 "[g]iven [Mr. Sanford's] earlier conviction for felon in possession, there is no reason to

13 believe he would, if released in this case, comply with a condition prohibiting him from

14 possession of firearms."  (*Id.* ¶ 5.)

15     In sum, Mr. Sanford's criminal history and his history of failing to abide by the

16 conditions of his supervision together with the nature of those violations support the

---

[4] The court declines to conclude that it could never consider the COVID-19 public health crisis as relevant to its consideration of community safety under 18 U.S.C. § 3142(f).  However, Mr. Sanford fails to make that case here—particularly in light of the current conditions at the FDC.  As noted above, there is no evidence of a Covid-19 outbreak at the FDC, and the facility has implemented robust Bureau of Prison measures to guard against such an outbreak and to contain one should it occur, *see* https://www.bop.gov/resources/news/20200313_covid-19.jsp (visited May 1, 2020); *see King*, 885 F.3d at 555 (permitting "judicial notice of the undisputed and publicly available information displayed on government websites"); *see also* Resp. at 10-12 (detailing the BOP measures implemented in response to the COVID-19 pandemic).  Further, the facility is far from overcrowded at only 68% of capacity.  (*See* Mot. at 6 ("[The FDC] currently houses 684 people with a capacity for 1000.").)

court's original decision to detain him, and the court denies his motion to reopen his detention hearing under 18 U.S.C. § 3142(f).

**B.  18 U.S.C. § 3142(i)(4)**

Mr. Sanford also moves under 18 U.S.C. § 3142(i)(4) for temporary release on grounds that the COVID-19 public health crisis constitutes "another compelling reason" for release under this provision. The relevant portion of § 3142(i)(4) states:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C.A. § 3142(i)(4). The only basis Mr. Sanford provides for finding "another compelling reason" under this provision is the existence of the COVID-19 pandemic. (*See generally* Mot.)  As the court has noted above, Mr. Sanford does not allege any health conditions that would render him particularly vulnerable to a COVID-19 infection. (*See* Reply at 5.)  Further, as also noted above, there is no evidence that any COVID-19 infections are present at the FDC where Mr. Sanford is detained. Although the court declines to hold that the COVID-19 pandemic may never contribute to finding "another compelling reason" for temporary release under 18 U.S.C. § 3142(i)(4), Mr. Sanford has not made that case here. Indeed, as the court similarly discussed with respect to Mr. Sanford's motion under 18 U.S.C. § 3142(f), if the mere existence of the COVID-19 pandemic alone provides "another compelling reason" for temporary release, then the court would be hard-pressed to envision a defendant who would not presently be entitled to relief under this provision. Similar to § 3142(f), the court cannot conclude that such a

result is what Congress intended when it added the temporary release provision to § 3142(i)(4). Accordingly, the court denies Mr. Sanford's motion under this provision as well.

## IV. CONCLUSION

For the reasons stated above, the court DENIES Mr. Sanford's motion to reopen his detention hearing under 18 U.S.C. § 3142(f) and for temporary release under 18 U.S.C. § 3142(i)(4).

Dated this 4th day of May, 2020.

JAMES L. ROBART
United States District Judge